UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR ELLISON,<br><br>           Plaintiff,<br><br>    v.<br><br>NEW JERSEY STATE PRISON MEDICAL DEPARTMENT, et al.,<br><br>           Defendants. | Civil Action No. 20-9465 (FLW)<br><br><br>MEMORANDUM OPINION<br>& ORDER |

      Plaintiff Arthur Ellison, a convicted prisoner confined at New Jersey State Prison, seeks to bring this civil action *in forma pauperis*, without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983. ECF Nos. 1, 1-1, 3. The Court previously denied without prejudice Plaintiff's application to proceed *in forma pauperis* ("IFP application") and permitted Plaintiff to submit more information about his finances. *See* ECF No. ECF Nos. 2, 4. Plaintiff subsequently submitted that information, ECF Nos. 5, 7, and, at this time, the Court grants his IFP application. *See* 28 U.S.C. § 1915. Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

      Plaintiff alleges that medical personnel at New Jersey State Prison provided inadequate treatment for a rash on his buttocks. In January 2015, Plaintiff saw Nurse Susan Spingler for a sick call. Accordingly to Plaintiff, Nurse Spingler initially "misdiagnosed the rash that appeared on [his] buttocks, and he is "still suffering from the misdiagnosis." *See* Complaint at 4, 6. The

1

following day Plaintiff saw Nurse Lance C. Carver who prescribed a cream for his rash.[1] *See id.* at 6.

A year later, in January 2016, after trying "several types of cream" for the rash, Plaintiff saw Provider Joy Camarillo, who provided Plaintiff with a nonformulary cream, Ketoconazole. *Id.* at 7.

On March 10, 2016, Plaintiff saw Nurse Carver again because the rash was beginning to spread, and Nurse Carver prescribed a six month supply of Hydrocerin cream. *Id.* Several days later, Plaintiff had a follow up with Provider Camarillo and told her the itchiness was getting worse and causing him sleepless nights. *Id.* He requested to see a dermatologist, but Camarillo prescribed a six-month supply of Nystatin and Triamcinolone instead. *See id.*

Approximately a year later, on April 10, 2017, Plaintiff saw Provider Inaish Jackson for the "spreading rash" on his buttocks and asked to be referred to a dermatologist. *Id.* Plaintiff does not state whether Jackson continued or changed his treatment for the rash.

On December 6, 2017, Plaintiff saw Geetha Hrishikesan, M.D., and complained that he has had a rash on his buttocks for three years. Plaintiff stated he had been seen by various providers and prescribed anti-fungal and steroid creams. *Id.* at 7-8. Plaintiff alleges that none of creams worked. *Id.* at 8. On January 3, 2018, Plaintiff saw Dr. Hrishikesan again for the rash, and he told the doctor that he had applied the Triamcinolone for four weeks, and it did not work. *Id.* at 8. Plaintiff requested to see a dermatologist. *Id.* Plaintiff does not state whether Dr. Hrishikesan changed his treatment as a result of either visit.

---

[1] Plaintiff lists the type of cream Carver provided, but it is illegible.

On March 18, 2018, Plaintiff saw Nurse Spingler and complained to her about the misdiagnosis and asked to see a dermatologist. *Id.* At this time, Plaintiff was using Eucerin cream. *Id.*

On August 18, 2018, Plaintiff saw Edith Senyumba, M.D., and complained about the irritating rash during his chronic care visit. Plaintiff informed Dr. Senyumba that the creams prescribed over the years were not working and that he needed to be referred to a dermatologist; however, Dr. Senyumba did not refer him to a dermatologist. *See id.* Plaintiff does not specify whether Dr. Senyumba provided any additional treatment to Plaintiff.

On September 22, 2018, Plaintiff saw Nurse Lindsay Pettorini and informed her that the itching and irritation had not subsided. *Id.* at 8. Plaintiff asked for an anti-itching cream. *Id.* On September 25, 2018, Plaintiff saw Provider Jackson and asked for a renewal of skin creams. *Id.* at 9.

On March 4, 2019, Plaintiff saw Dr. Miller at his chronic care visit; he informed her that the itching rash on his buttocks had worsened since 2015, and he asked for a referral to a dermatologist. *Id.* On March 26, 2019, Plaintiff saw Dr. Miller again about the rash on his buttocks and told her that Nystatin was not working. Dr. Miller stated that Lamis[i]l was good for the itching and irritation. *Id.* Dr. Miller did not refer Plaintiff to a dermatologist, however. *Id.*

On June 5, 2020, Plaintiff had a sick call with Paulo Verdeflair, N.P. *Id.* Plaintiff told N.P. Verdeflair that the rash had become "somewhat unbearable", that he has had the rash since 2015, and that he has not been referred to a specialist or a dermatologist. *Id.* Plaintiff does not indicate whether N.P. Verdeflair provided any treatment for the rash. Plaintiff alleges that he is "mentally messed up" and fears the rash "could be possibly cancerous." *Id.*

Plaintiff sues the New Jersey State Prison Medical Department and three of the medical providers in connection with his medical treatment for the rash. Plaintiff sues Nurse Susan Spingler who initially "misdiagnosed the rash that appeared on [Plaintiff's] buttocks. Complaint at 4. He also sues Dr. Senyumba for misdiagnosing the rash and for failing to refer him to a dermatologist to determine the cause of the rash. *See id.* Plaintiff also sues sue Dr. Miller because he explained to Dr. Miller in 2019 and 2020 that the Nystatin cream was not working and the rash was worsening. *Id.* at 5. Plaintiff also told Miller that "a dermatologist is needed" because many different creams have not worked and the rash is worsening, but she did not refer him to a dermatologist. *See id.*

Plaintiff does not seek injunctive relief and instead seeks damages in the amount of $500,000.00. *See* Complaint at 7.

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted). Conclusory allegations do not suffice. *See id.* Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

The Court construes Plaintiff to raise federal claims for relief pursuant to 42 U.S.C. § 1983, and to allege that he has been provided inadequate medical care in connection with the longstanding rash on his buttocks. "To state a claim under § 1983, a plaintiff must allege the

4

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

From the outset, the Court dismisses the New Jersey State Prison Medical Department because this entity is not a proper defendant under 42 U.S.C. § 1983. *See Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that the state prison medical department could not be sued under Section 1983 since it is not a person); *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (citing *Fischer* and concluding the same).

The Court next addresses the federal claims against the remaining individual defendants.[2] An inmate's Eighth Amendment rights are violated where a prison official acts (1) with deliberate indifference to (2) an inmate's serious medical needs. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (describing two-part standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976)); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining same).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted); *see also Tsakonas v. Cicchi*, 308 F. App'x. 628, 632 (3d Cir. 2009) (noting that a "serious" medical condition is one "such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death") (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir.1991)).

---

[2] The Court construes Plaintiff to assert claims for damages against the medical providers in their personal capacities only.

Notably, in *Tsakonas v. Cicchi*, 308 F. App'x. 628, 632 (3d Cir. 2009) the Third Circuit affirmed the dismissal of an Eighth Amendment claim premised upon a denial of treatment for "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles on his right hand" on the basis that the prisoner had failed to allege any serious medical conditions; *see id.*; *see also Sledge v. Kooi*, 564 F.3d 105 (2nd Cir. 2009) (alleged eczema, back pain, stomach disorders, allergies, and asthma did not constitute a "serious medical need" on which to premise an Eighth Amendment claim of deliberate medical indifference). In *McKeithan v. Beard*, 322 F. App'x 194 (3d Cir. 2009), however, the Third Circuit clarified that the skin condition eczema can be a serious medical condition when the skin is so cracked and dry that it bleeds; *see also Walker v. Cal. Dep't of Corr. & Rehab.*, 2011 U.S. Dist. LEXIS 132804, at *9–10, 2011 WL 5825929 (E.D. Cal. 2011) ("Plaintiff has sufficiently shown a serious medical need, [since] she suffered from eczema, with open sores and rashes developing all over her body, causing pain, unbearable itching, and elevated blood pressure"). Courts have also considered a rash to be a serious medical condition when it is not an isolated occurrence and appears in conjunction with other symptoms that suggest a serious illness or condition. *See e.g.*, *Abu-Jamal v. Kerestes*, 779 F. App'x. 893, 896 (3d Cir. 2019) (involving the denial of Hepatitis C treatment to an inmate who tested positive for the Hepatitis C antibody and developed a skin rash, hyperglycemia, and anemia, which were indicative of an active Hepatitis C infection).

District courts here and elsewhere, however, have dismissed Eighth Amendment claims involving isolated rashes, eczema, itching, or dry skin. *See Planker v. Christie*, Civ. A. No. 13–4464, 2015 WL 268847, at *19–20 (D.N.J. Jan. 21, 2015) (holding that an inmate's rashes, including jock itch, did not establish a serious medical need); *Toro v. Nutter*, No. 13–7552, 2015 WL 4667670, at *6 (E.D. Pa. Aug. 6, 2015) (skin infection in groin area not a serious medical

6

need); *Young v. Slatowski*, Civ. A. No. 07–04840, 2011 WL 1044891, at *6 (E.D. Pa. Mar. 22, 2011) (holding that an inmate's severe itching and painful skin irritation from a scabies infection did not rise to the level of a serious medical need); *Gonzalez–Revna v. Ellis*, Civ. A. No. 09–522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one that causes pain and itching, is a sufficiently serious medical need" to support a constitutional violation); *Samuels v. Jackson*, 1999 WL 92617, at * 1–3 (S.D.N.Y., Feb. 22, 1999) (Mukasey, J.) (prisoner's "[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not constitute a sufficiently "serious medical need" for purposes of Eighth Amendment).

Here, Plaintiff fails to provide sufficient facts to suggest that his skin condition amounts to a serious medical condition, as required to state an Eighth Amendment claim. Throughout the Complaint, Plaintiff alleges that he has an itchy and irritating rash on his buttocks that has not resolved despite treatment.[3] Plaintiff does not allege, however, that the rash is bleeding or infected (*i.e.* with open sores or wounds). Nor does Plaintiff allege that the rash has occurred in conjunction with other symptoms that suggest he has a serious illness or condition. Although Plaintiff alleges that he fears that the rash may be cancer, he provides no facts, other than his own self-diagnosis, to support this conclusion. Because isolated rashes, even longstanding ones, are not a serious medical condition, Plaintiff fails to state a claim for relief under the Eighth Amendment.

Plaintiff also fails to provide sufficient facts showing that any of the medical providers acted with deliberate indifference to a serious risk of harm in treating the rash or denying him a referral to a dermatologist. Notably, even where a prisoner has pleaded facts showing he has a serious medical condition, a he also must present facts showing that the defendant prison officials

---

[3] It is not clear from the Complaint whether Plaintiff's rash resolves and returns or whether Plaintiff has had the rash continuously since 2015; however, the Court assumes for purposes of this screening that Plaintiff has had the rash continuously to some degree since 2015.

7

acted with a sufficiently culpable state of mind. A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable. *Young v. Quinlan*, 960 F.2d 351 (3d Cir.1992) (superseded by statute on other grounds). The Third Circuit has found "deliberate indifference" where prison officials delay medical treatment for non-medical reasons or continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm. *See Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999). The requisite state of mind may be established by circumstantial evidence. *See Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) ("subjective knowledge on the part of the official can be shown by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk").

Moreover, disagreements over medical judgment or treatment cannot form the basis of an Eighth Amendment claim. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir.1990) ("there may ... be several acceptable ways to treat an illness."); *Young*, 960 F.2d at 358 n. 18 (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief under Section 1983). While "mere disagreement as to the proper medical treatment" does not support an Eighth Amendment violation, a prison official has acted with deliberate indifference if he delays necessary medical treatment for non-medical reasons*, Lanzaro*, 834 F.2d at 346, opts for "an easier and less efficacious treatment" of the inmate's serious medical condition, *id.* at 347 (internal quotation marks omitted), or "prevent[s] an inmate from receiving recommended treatment for serious medical needs." *Id.*

8

In this action, Plaintiff provides facts showing that he received treatment from multiple medical providers for his skin rash and that several of the individual medical providers changed his treatment when he reported that the prescribed creams were not working. He does not allege that the medical providers ignored signs of infection or other symptoms of serious illness, facts that could suggest that they did not exercise professional judgment in treating him. And as noted above, Plaintiff does not provide facts to suggest that he had other symptoms, in addition to the rash, that could suggest a serious condition, and that the medical defendants failed to investigate these symptoms or provide adequate treatment. Instead, Plaintiff focuses primarily on the fact that none of the medical providers referred him to a dermatologist, as he requested, when the rash would not clear up. But he has not provided facts showing that the medical providers were deliberately indifferent to a serious risk of harm when they failed to refer him to a dermatologist, as required to state an Eighth Amendment claim. For all these reasons, Plaintiff has not shown that any of the medical providers acted with deliberate indifference in connection with treating his rash, and he fails to state a claim under the Eighth Amendment.

At this time, the Court dismisses without prejudice the Eighth Amendment deliberate indifference claims as to the remaining individual Defendants. It is possible that Plaintiff has omitted facts that would permit him to state a claim for relief under the Eighth Amendment against one or more of the medical providers. Within 45 days, Plaintiff may submit an Amended Complaint if he can cure the deficiencies in his Eight Amendment inadequate medical care claims against one or more of the individual medical providers.

The Court next addresses the possible state law claims. Plaintiff vaguely alleges that Defendants Nurse Spingler and Dr. Senyumba "misdiagnosed" his rash. It is possible that Plaintiff is seeking to bring state law claims for medical negligence. The Court has dismissed Plaintiff's

9

federal claims; as such, the only basis for this Court's jurisdiction over the state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  *Cnty. of Ocean v. Grewal*, 475 F. Supp.3d 355, 386 (D.N.J. 2020) (citing 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284–85 (3d Cir. 1993)).  Having dismissed the federal claims for relief, the Court exercises its discretion and declines supplemental jurisdiction over any potential state law claims at this time.[4]

**IT IS, THEREFORE**, on this 23rd day of January 2023,

**ORDERED** that the Clerk of the Court shall mark this matter as OPEN; and it is further

**ORDERED** that Plaintiff's IFP application is GRANTED; and it is further

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b), and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of New Jersey State Prison; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915

---

[4] If Plaintiff files an Amended Complaint with respect to his Eighth Amendment claims within 45 days, he may also reassert his state law claims for relief.

does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; i.e., Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that Plaintiff's Eighth Amendment claims, alleging inadequate medical care and brought pursuant to 42 U.S.C. § 1983, are dismissed WITH PREJUDICE as to the New Jersey State Prison Medical Department pursuant to the Court's screening authority, *see* 28 U.S.C. § 1915(e), for failure to state a claim for relief; and it is further

**ORDERED** that Plaintiff's Eighth Amendment claims, alleging inadequate medical care and brought pursuant to 42 U.S.C. § 1983, are dismissed WITHOUT PREJUDICE as to the remaining Defendants pursuant to the Court's screening authority, *see* 28 U.S.C. § 1915(e), for failure to state a claim for relief; and it is further

**ORDERED** that having dismissed the federal claims, the Court declines supplemental jurisdiction over the remaining state law claims; and it is further

**ORDERED** that Plaintiff may file an amended complaint within 45 days to the extent he can cure the deficiencies in his federal claims against one or more of the individual medical providers; if Plaintiff files an amended complaint within 45 days, he may also reassert his state law claims; and it is further

**ORDERED** that if Plaintiff elects not to submit an amended complaint within 45 days, this dismissal shall automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and CLOSE this case accordingly.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge